IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | Civil Action No.: 01-945 (DWF/AJB) |
| CREATIVE PUBLISHING INTERNATIONAL, INC., a corporation, Defendant. | ) | |

CONSENT DECREE

WHEREAS, Plaintiff, the United States of America, has commenced this action by filing the Complaint herein; Defendant has waived service of the Summons and Complaint; the parties have been represented by the attorneys whose names appear hereafter; and the parties have agreed to the settlement of this action upon the following terms and conditions, without adjudication of any issue of fact or law and without Defendant admitting liability for any of the matters alleged in the Complaint;

NOW, THEREFORE, upon stipulation of Plaintiff and Defendant, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. This Court has jurisdiction of the subject matter and of the parties.

2. The Complaint states a claim upon which relief may be granted against the Defendant under Sections 5(a), 5(m)(1)(A), 13(b), 16(a) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a) and 57b.

3. Entry of this order is in the public interest.



FILED MAY 31 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD MAY 31 2001
DEPUTY CLERK

## DEFINITIONS

4. "Negative Option Plan" shall have the meaning set forth in Section 425.1(c)(1) of the FTC's Trade Regulation Rule entitled "Use of Prenotification Negative Option Plans" ("the Negative Option Rule"), 16 C.F.R. Part 425, which is: "a contractual plan or arrangement under which a seller periodically sends to subscribers an announcement which identifies merchandise (other than annual supplements to previously acquired merchandise) it proposes to send to subscribers to such plan, and the subscribers thereafter receive and are billed for the merchandise identified in each such announcement, unless by a date or within a time specified by the seller with respect to each such announcement the subscribers, in conformity with the provisions of such plan, instruct the seller not to send the identified merchandise."

5. "Direct Preview Program" shall mean the negative option plans operated by the Defendant that offer books to consumers for a 14-day free trial period.

6. "Subscriber" shall have the meaning set forth in Section 425.1(c)(2) of the Negative Option Rule, which is: "any person who has agreed to receive the benefits of, and assume the obligations entailed in, membership in any negative option plan and whose membership in such negative option plan has been approved and accepted by the seller."

7. "Contract-complete Subscriber" shall have the meaning set forth in Section 425.1(c)(3) of the Negative Option Rule, which is: "a subscriber who has purchased the minimum quantity of merchandise required by the terms of membership in a negative option plan."

8. "Selection" shall have the meaning set forth in Section 425.1(c)(5) of the Negative Option Rule, which is: "the merchandise identified by a seller under any negative option plan

as the merchandise which the subscriber will receive and be billed for, unless by the date, or within the period specified by the seller, the subscriber instructs the seller not to send such merchandise."

9. "Announcement" shall have the meaning set forth in Section 425.1(c)(6) of the Negative Option Rule, which is: "any material sent by a seller using a negative option plan in which the selection is identified and offered to subscribers."

10. "Form" shall have the meaning set forth in Section 425.1(c)(7) of the Negative Option Rule, which is: "any form which the subscriber returns to the seller to instruct the seller not to send the selection."

11. "Continuity Program" shall mean any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products or the provision of services without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product or service.

12. "Free to Pay Conversion Offer" shall mean any offer by the Defendant to provide free products or services or a free trial period of products or services to consumers where, as a result of accepting the free products or services or the free trial period of products or services, consumers are enrolled in a Negative Option Plan or a Continuity Program, or are otherwise subsequently required to contact the Defendant to avoid receiving additional products or services and incurring any financial obligation for such additional products or services.

## CIVIL PENALTY

13. Defendant Creative Publishing International, Inc., its successors and assigns, shall pay to Plaintiff a civil penalty, pursuant to Section 5(m)(1)(A) of the Federal Trade Commission Act, 15 U.S.C. § 45(m)(1)(A), in the amount of $200,000.

14. Defendant shall make the payment required by Paragraph 13 within five (5) days of the date of entry of this Consent Decree by electronic fund transfer in accordance with the instructions provided by: The Office of Consumer Litigation, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 for appropriate disposition.

15. In the event of any default in payment, which default continues for ten days beyond the due date of payment, the entire unpaid penalty, together with interest, as computed pursuant to 28 U.S.C. § 1961 from the date of default to the date of payment, shall immediately become due and payable.

## CESSATION OF COLLECTION EFFORTS AND CONSUMER NOTIFICATION

16. Defendant, its successors and assigns, shall cease all collection efforts for all books that were shipped to consumers when they failed to return to the Defendant rejection Forms that were in use from July 1, 1997 through June 20, 1999.

17. Defendant, its successors and assigns, shall send a notice, by March 31, 2001 at the latest, to all consumers who are members of the defendant's Direct Preview Programs and whose accounts were established from July 1, 1997 through June 20, 1999, disclosing all material terms and conditions required to be disclosed by this Consent Decree.

## INJUNCTION

**Business Activities Prohibited Pursuant to The Negative Option Rule**

18. Defendant, its successors and assigns, and its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from ever violating, directly or through any corporation, subsidiary, division or other device, any provision of the Negative Option Rule or as the Rule may hereafter be amended. A copy of this Rule is attached hereto as "Appendix A" and incorporated herein as if fully set forth verbatim. Defendant is enjoined from violating the Negative Option Rule, including, but not limited to, the following:

A. Failing to disclose clearly and conspicuously in any advertisement containing or accompanying any device or material that a prospective Subscriber utilizes to request acceptance or enrollment in a Negative Option Plan, all material terms of membership in Defendant's Negative Option Plan, as required by Section 425.1(a)(1) of the Negative Option Rule. Such material terms include, but are not limited to:

i. That aspect of the plan under which the Subscriber must notify the seller, in the manner provided for by the seller, if he does not wish to purchase the Selection;

ii. Any obligation assumed by the Subscriber to purchase a minimum quantity of merchandise;

iii. The right of a Contract-complete Subscriber to cancel his membership at any time;

iv. Whether billing charges will include an amount for postage and handling;

v. A disclosure indicating that the Subscriber will be provided with at least ten (10) days in which to mail any Form, contained in or accompanying an Announcement identifying the Selection, to the seller;

vi. A disclosure that the seller will credit the return of any selections sent to a subscriber, and guarantee to the Postal Service or the subscriber postage to return such selections to the seller when the announcement and form are not received by the subscriber in time to afford him at least ten (10) days in which to mail his form to the seller; and

vii. The frequency with which the Announcements and Forms will be sent to the Subscriber and the maximum number of Announcements and Forms which will be sent to him during a 12-month period.

B. Failing to mail to consumers, within the time specified by Section 425.1 (a)(3) of the Negative Option Rule, a Form, contained in or accompanying an Announcement, clearly and conspicuously disclosing that the Subscriber will receive the Selection identified in the Announcement unless he instructs the seller that he does not want the Selection; and designating a procedure by which the Form may be used for the purpose of enabling the Subscriber to so instruct the seller; and specifying either the return date or the mailing date.

**Business Activities Prohibited Pursuant to**
**The Telemarketing Sales Rule**

19. Defendant, its successors and assigns, and its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from ever violating, directly or through any corporation, subsidiary, division or other device, any provision of the Federal Trade Commission's Trade Regulation Rule entitled "Telemarketing Sales Rule," 16 C.F.R. Part 310, or as it may hereafter be amended, including, but not limited to, failing to disclose, in a clear and conspicuous manner, before a customer pays for products or services offered, all material restrictions, limitations, or conditions to purchase, receive, or use the products or services that are the subject of the sales offer, as required by Section 310.3(a)(1)(ii) of the Telemarketing Sales Rule. A copy of this Rule is attached hereto as "Appendix B" and incorporated herein as if fully set forth verbatim.

**Other Prohibited Business Activities**

20. Defendant, its successors and assigns, and its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them who receive actual notice of this Consent Decree by personal service or otherwise, are hereby enjoined from:

A. Making any representation, in any manner, expressly or by implication, in connection with the offering to consumers of any Free to Pay Conversion Offer, including, but not limited to, that consumers will incur no risks or obligations, unless, at the time of making such representation, all material terms and

conditions of the Free to Pay Conversion Offer are clearly and conspicuously disclosed, including:

i. if true, that consumers who accept a Free to Pay Conversion Offer may receive subsequent offers or additional products or services that require consumers to contact the Defendant to avoid receiving additional products or services and incurring any financial obligation for such additional products or services;

ii. if true, that the Defendant automatically enrolls consumers in a Negative Option Plan or a Continuity Program, if consumers make an initial purchase or accept free products or services or products or services for a free trial period;

iii. if true, that consumers who accept a Free to Pay Conversion Offer must pay for shipping and handling to return the products that the Defendant offers for free or for a free trial period as part of the Free to Pay Conversion Offer, or that consumers can obtain return labels from the Defendant to return such products; and

iv. at least one reasonable means consumers may effectively use to prevent the shipment of additional products, the provision of additional services, or any financial obligation for additional products or services.

B. Misrepresenting any material term or condition of any Free to Pay Conversion Offer.

C. Selling or distributing or causing to be sold or distributed products or services by means of a Continuity Program without first obtaining the consent of consumers to participate in a Continuity Program before any shipment of products or provision of services is made. Prior to obtaining consumers' consent, Defendant shall disclose clearly and conspicuously in all promotional materials and solicitations, including, but not limited to, direct mail solicitations, magazine cover wraps, or inbound and outbound telemarketing calls, all material terms and conditions of the Continuity Program, including, but not limited to:

i. the fact that periodic shipments of products or the periodic provision or the continuation of services will occur without further action by consumers;

ii. a description of each good or the type of good to be included in each shipment or a description of the services that will be performed or continued;

iii. the approximate interval between each shipment or service period;

iv. the cost or range of costs for each shipment or service period, including whether consumers must pay for shipping and handling;

v. the minimum number of purchases or minimum service period required by the Defendant, if any;

vi. all material terms and conditions of a guarantee, refund or return policy if any representation is made about such a policy, or, if the Defendant has a policy of not making refunds or accepting returns, a statement that this is the Defendant's policy; and

vii. a description of the terms, conditions, and procedures under which consumers may cancel further shipments or discontinue a service.

D. Shipping merchandise to consumers without obtaining their prior express consent to receive products, as required by Section (a) of the Unordered Merchandise Statute, 39 U.S.C. § 3009(a), or as the Statute may hereafter be amended; provided that, if the Defendant requires that consumers contact the Defendant to reject products, the shipping of such products when consumers fail to contact the Defendant will not constitute a violation of this Order, if the Defendant has clearly and conspicuously disclosed to consumers that they must contact the Defendant to reject the products and consumers have given their prior, express consent to this procedure; and

E. Mailing bills or any dunning communications to any recipient of products shipped in violation of the foregoing Paragraph 20.D.

RECORD KEEPING

21. For a period of three (3) years from the date of entry of this Consent Decree, Defendant, its successors and assigns, shall maintain and make available to the Federal Trade Commission, within thirty (30) days of the date of receipt of a written request, business records demonstrating compliance with the terms and provisions of this Consent Decree, including, but not limited to:

A. Copies of all sales scripts, training materials, advertisements, or other marketing materials utilized; provided that copies of all sales scripts, training materials, advertisements, or other marketing materials utilized shall be retained for (3)

years after the last date of dissemination by the Defendant, its successors and assigns, of any such materials;

B. Records evidencing consumers' affirmative consent, received by the seller before any shipment of products or provision of services is made, to participate in or join any Continuity Program or Negative Option Plan;

C. Books, records and accounts that, in reasonable detail, accurately and fairly reflect the cost of products or services sold, revenues generated, and the disbursement of such revenues;

D. Records containing the names, addresses, phone numbers, dollar amounts paid, quantity of products or services purchased, and description of products or services purchased, for all consumers to whom such business has sold, invoiced or shipped any products or services; and

E. Records that reflect, for every written consumer complaint or refund request, whether received directly or indirectly or through any third party:

i. the consumer's name, address, telephone number and the dollar amount paid by the consumer;

ii. the written complaint or refund request, if any, and the date of the complaint or refund request;

iii. the basis of the complaint, including the name of any salesperson complained against, and the nature and result of any investigation conducted concerning any complaint;

iv. each response and the date of the response;

v. any final resolution and the date of the resolution; and

vi. in the event of a denial of a refund request, the reason for the denial.

PERSONS AFFECTED; CONTINUING JURISDICTION

22. Defendant, its successors and assigns, shall, within thirty (30) days of the entry of this Consent Decree, provide a copy of this Consent Decree, the Negative Option Rule, the Telemarketing Sales Rule, the Statement of Basis and Purpose for these Rules, and the Unordered Merchandise Statute to each of its officers and to all supervisory or managerial agents, servants, employees and attorneys who are engaged in the marketing or sale of Defendant's books, publications, or any other product, through the use of Negative Option Plans, Continuity Programs, or Free to Pay Conversion Offers, secure from each such person a signed statement acknowledging receipt of a copy of this Consent Decree and all other materials listed above, and shall, within ten (10) days of complying with this Paragraph, file an affidavit with the Court and serve the Federal Trade Commission, by mailing a copy thereof, to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580 (or by hand delivery to Fourth Floor, 601 Pennsylvania Ave., N.W., Washington, D.C. 20004), setting forth the fact and manner of their compliance, including the name and title of each person to whom a copy of the Consent Decree and other materials have been provided.

23. Defendant, its successors and assigns, shall notify the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580, at least thirty (30) days prior to any change in Defendant's business including, but not limited to, merger, incorporation, dissolution, assignment, sale which

results in the emergence of a successor corporation, the creation or dissolution of a subsidiary or parent, or any other change which may affect Defendant's obligations under this judgment. *Provided, however*, that with respect to any proposed change in the corporation about which the Defendant learns less than 30 days prior to the date such action is to take place, the Defendant shall notify the Commission's Associate Director for Enforcement as soon as practicable after obtaining such knowledge.

24. Defendant is hereby required, in accordance with 31 U.S.C. § 7701, to furnish to the Federal Trade Commission its taxpayer identifying numbers (employer identification numbers), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendant's relationship with the government.

25. This Court shall retain jurisdiction of this matter for the purposes of enabling any of the parties to this Consent Decree to apply to the Court at any time for such further orders or directives as may be necessary or appropriate for the interpretation or modification of this Consent Decree, for the enforcement of compliance therewith, or for the punishment of violations thereof.

JUDGMENT IS THEREFORE ENTERED in favor of Plaintiff and against Defendant, pursuant to all the terms and conditions recited above.

Dated: May 31, 2001.

United States District Judge

The parties, by their respective counsel, hereby consent to the terms and conditions of the Consent Decree as set forth above and consent to the entry thereof. Defendant waives any rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED: 5-25-01

FOR THE UNITED STATES OF AMERICA:

STUART E. SCHIFFER
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice

ROBERT M. SMALL
United States Attorney
District of Minnesota

By: ______________________

Assistant United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600

EUGENE M. THIROLF
Director
Office of Consumer Litigation

By: ______________________
ELIZABETH STEIN
Attorney
Office of Consumer Litigation
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044

FOR THE FEDERAL TRADE COMMISSION

ELAINE D. KOLISH
Associate Director
Division of Enforcement
Bureau of Consumer Protection
Federal Trade Commission

JAMES REILLY DOLAN
Assistant Director
Division of Enforcement
Bureau of Consumer Protection

EDWIN RODRIGUEZ
ROBIN ROSEN SPECTOR
Attorneys
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-3147

FOR THE DEFENDANT

CREATIVE PUBLISHING INTERNATIONAL

By: ______________________
DAVID MURPHY, President

HALL, DICKLER, KENT, GOLDSTEIN &
WOOD, L.L.P.
Attorneys for Defendant
909 Third Avenue
New York, NY 10022-4731
(212) 339-5400

By: ______________________
Jeffrey S. Edelstein
A Member of the Firm

## REASONS FOR SETTLEMENT

This statement accompanies the Consent Decree executed by defendant Creative Publishing International, Inc., in settlement of an action brought to recover penalties and other equitable relief from defendant for engaging in acts or practices in violation of the Commission's Trade Regulation Rule Regarding Use of Prenotification Negative Option Plans ("Negative Option Rule"), 16 C.F.R. Part 425, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the Unordered Merchandise Statute, 39 U.S.C. § 3009, and Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45,

Pursuant to Section 5(m)(3) of the Federal Trade Commission Act, as amended (15 U.S.C. § 45(m)(3)), the Commission hereby sets forth its reasons for settlement by entry of a Consent Decree and injunction:

> On the basis of the allegations contained in the attached Complaint, the Commission believes that the payment of $200,000 in civil penalties by the defendant constitutes an appropriate amount upon which to base a settlement. The amount should assure compliance with the law by the defendant and by others who may be in violation of the Negative Option Rule, the Telemarketing Sales Rule, the Unordered Merchandise Statute, and the FTC Act. Further, the defendant is permanently enjoined from engaging in acts or practices that are prohibited by these laws. With the entry of such Consent Decree the time and expense of litigation will be avoided.

For the foregoing reasons, the Commission believes that the settlement by entry of the attached Consent Decree with Creative Publishing International, Inc. is justified and well within the public interest.

**CERTIFICATE**

**OF**

**CORPORATE RESOLUTION**

I. Naber Kazemiay, the undersigned Secretary of Creative Publishing International, Inc. a Minnesota corporation, do hereby certify that a meeting of the Board of Directors of said corporation was duly held on the 5th day of December, 2000, a quorum being present, and that the following resolution was adopted, and is now in full force and effect, to wit:

> **RESOLVED,** that the Consent Decree proposed to be entered in the United States of America v. Creative Publishing International, Inc., in the District Court for the District of Minnesota, in the form and upon the terms and conditions consented to on behalf of this corporation by David Murphy, President, which provides for, among other things, a civil penalty in the amount of $200,000, hereby is, in all respects, ratified, confirmed and approved.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name on this 5th day of December, 2000.

Secretary

[Corporate Seal]

HDKNY/106237/v#1

## PART 425—USE OF PRENOTIFICATION NEGATIVE OPTION PLANS

### § 425.1 The rule.

(a) In connection with the sale, offering for sale, or distribution of goods and merchandise in or affecting commerce, as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice, for a seller in connection with the use of any negative option plan to fail to comply with the following requirements:

(1) Promotional material shall clearly and conspicuously disclose the material terms of the plan, including:

(i) That aspect of the plan under which the subscriber must notify the seller, in the manner provided for by the seller, if he does not wish to purchase the selection;

(ii) Any obligation assumed by the subscriber to purchase a minimum quantity of merchandise;

(iii) The right of a contract-complete subscriber to cancel his membership at any time;

(iv) Whether billing charges will include an amount for postage and handling;

(v) A disclosure indicating that the subscriber will be provided with at least ten (10) days in which to mail any form, contained in or accompanying an announcement identifying the selection, to the seller;

(vi) A disclosure that the seller will credit the return of any selections sent to a subscriber, and guarantee to the Postal Service or the subscriber postage to return such selections to the seller when the announcement and form are not received by the subscriber in time to afford him at least ten (10) days in which to mail his form to the seller;

(vii) The frequency with which the announcements and forms will be sent to the subscriber and the maximum number of announcements and forms which will be sent to him during a 12-month period.

(2) Prior to sending any selection, the seller shall mail to its subscribers, within the time specified by paragraph (a)(3) of this section:

(i) An announcement identifying the selection;

(ii) A form, contained in or accompanying the announcement, clearly and conspicuously disclosing that the subscriber will receive the selection identified in the announcement unless he instructs the seller that he does not want the selection, designating a procedure by which the form may be used for the purpose of enabling the subscriber so to instruct the seller, and specifying either the return date or the mailing date.

(3) The seller shall mail the announcement and form either at least twenty (20) days prior to the return date or at least fifteen (15) days prior to the mailing date, or provide a mailing date at least ten (10) days after receipt by the subscriber, provided, however, that whichever system the seller

chooses for mailing the announcement and form, such system must provide the subscriber with at least ten (10) days in which to mail his form.

(b) In connection with the sale or distribution of goods and merchandise in or affecting commerce, as "commerce" is defined in the Federal Trade Commission Act, it shall constitute an unfair or deceptive act or practice for a seller in connection with the use of any negative option plan to:

(1) Refuse to credit, for the full invoiced amount thereof, the return of any selection sent to a subscriber, and to guarantee to the Postal Service or the subscriber postage adequate to return such selection to the seller, when:

(i) The selection is sent to a subscriber whose form indicating that he does not want to receive the selection was received by the seller by the return date or was mailed by the subscriber by the mailing date;

(ii) Such form is received by the seller after the return date, but has been mailed by the subscriber and postmarked at least 3 days prior to the return date;

(iii) Prior to the date of shipment of such selection, the seller has received from a contract-complete subscriber, a written notice of cancellation of membership adequately identifying the subscriber; however, this provision is applicable only to the first selection sent to a canceling contract-complete subscriber after the seller has received written notice of cancellation. After the first selection shipment, all selection shipments thereafter are deemed to be unordered merchandise pursuant to section 3009 of the Postal Reorganization Act of 1970, as adopted by the Federal Trade Commission in its public notice, dated September 11, 1970;

(iv) The announcement and form are not received by the subscriber in time to afford him at least ten (10) days in which to mail his form.

(2) Fail to notify a subscriber known by the seller to be within any of the circumstances set forth in paragraphs (b)(1)(i) through (iv) of this section, that if the subscriber elects, the subscriber may return the selection with return postage guaranteed and receive a credit to his account.

(3) Refuse to ship within 4 weeks after receipt of an order merchandise due subscribers as introductory and bonus merchandise, unless the seller is unable to deliver the merchandise originally offered due to unanticipated circumstances beyond the seller's control and promptly makes a reasonably equivalent alternative offer. However, where the subscriber refuses to accept alternatively offered introductory merchandise, but instead insists upon termination of his membership due to the seller's failure to provide the subscriber with his originally requested introductory merchandise, or any portion thereof, the seller must comply with the subscriber's request for cancellation of membership, provided the subscriber returns to the seller any introductory merchandise which already may have been sent him.

(4) Fail to terminate promptly the membership of a properly identified contract-complete subscriber upon his written request.

(5) Ship, without the express consent of the subscriber, substituted merchandise for that ordered by the subscriber.

(c) For the purposes of this part:

(1) *Negative option plan* refers to a contractual plan or arrangement under which a seller periodically sends to subscribers an announcement which identifies merchandise (other than annual supplements to previously acquired merchandise) it proposes to send to subscribers to such plan, and the subscribers thereafter receive and are billed for the merchandise identified in each such announcement, unless by a date or within a time specified by the seller with respect to each such announcement the subscribers, in conformity with the provisions of such plan, instruct the seller not to send the identified merchandise.

(2) *Subscriber* means any person who has agreed to receive the benefits of, and assume the obligations entailed in, membership in any negative option plan and whose membership in such negative option plan has been approved and accepted by the seller.

(3) *Contract-complete subscriber* refers to a subscriber who has purchased the minimum quantity of merchandise required by the terms of membership in a negative option plan.

(4) *Promotional material* refers to an advertisement containing or accompanying any device or material which a prospective subscriber sends to the seller to request acceptance or enrollment in a negative option plan.

(5) *Selection* refers to the merchandise identified by a seller under any negative option plan as the merchandise which the subscriber will receive and be billed for, unless by the date, or within the period specified by the seller, the subscriber instructs the seller not to send such merchandise.

(6) *Announcement* refers to any material sent by a seller using a negative option plan in which the selection is identified and offered to subscribers.

(7) *Form* refers to any form which the subscriber returns to the seller to instruct the seller not to send the selection.

(8) *Return date* refers to a date specified by a seller using a negative option plan as the date by which a form must be received by the seller to prevent shipment of the selection.

(9) *Mailing date* refers to the time specified by a seller using a negative option plan as the time by or within which a form must be mailed by a subscriber to prevent shipment of the selection.

(38 Stat. 717, as amended; 15 U.S.C. 41-58)

[38 FR 4896; Feb. 22, 1973; 38 FR 6991, Mar. 15, 1973, as amended at 63 FR 44562, Aug. 20, 1998]

## PART 310—TELEMARKETING SALES RULE

Sec.

310.1 Scope of regulations in this part.
310.2 Definitions.
310.3 Deceptive telemarketing acts or practices.
310.4 Abusive telemarketing acts or practices.
310.5 Recordkeeping requirements.
310.6 Exemptions.
310.7 Actions by States and private persons.
310.8 Severability.

AUTHORITY: 15 U.S.C. 6101-6108.

SOURCE: 60 FR 43864, Aug. 23, 1995, unless otherwise noted.

**§ 310.1 Scope of regulations in this part.**

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108.

**§ 310.2 Definitions.**

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a State.

(c) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(d) *Commission* means the Federal Trade Commission.

(e) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(f) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(g) *Credit card sales draft* means any record or evidence of a credit card transaction.

(h) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(i) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(j) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(k) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services.

(l) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

(m) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services.

(n) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services.

(o) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(p) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(q) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(r) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(s) *State* means any State of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(t) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer.

(u) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: Contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term *further solicitation* does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

### § 310.3 Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer pays[1] for goods or services offered, failing to disclose, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[2]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion; and the no purchase/no payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate; and

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(2) Misrepresenting, directly or by implication, any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability; or

(vii) A seller's or telemarketer's affiliation with, or endorsement by, any government or third-party organization;

(3) Obtaining or submitting for payment a check, draft, or other form of negotiable paper drawn on a person's checking, savings, share, or similar account, without that person's express verifiable authorization. Such authorization shall be deemed verifiable if any of the following means are employed:

(i) Express written authorization by the customer, which may include the customer's signature on the negotiable instrument; or

(ii) Express oral authorization which is tape recorded and made available upon request to the customer's bank and which evidences clearly both the customer's authorization of payment for the goods and services that are the subject of the sales offer and the customer's receipt of all of the following information:

---

[1] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment.

[2] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226, compliance with the disclosure requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with §310.3(a)(1)(i) of this Rule.

(A) The date of the draft(s);

(B) The amount of the draft(s);

(C) The payor's name;

(D) The number of draft payments (if more than one);

(E) A telephone number for customer inquiry that is answered during normal business hours; and

(F) The date of the customer's oral authorization; or

(iii) Written confirmation of the transaction, sent to the customer prior to submission for payment of the customer's check, draft, or other form of negotiable paper, that includes:

(A) All of the information contained in §§310.3(a)(3)(ii)(A)-(F); and

(B) The procedures by which the customer can obtain a refund from the seller or telemarketer in the event the confirmation is inaccurate; and

(4) Making a false or misleading statement to induce any person to pay for goods or services.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3 (a) or (c), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

**§310.4 Abusive telemarketing acts or practices.**

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person, for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney; or

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in

obtaining or arranging a loan or other extension of credit for a person.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; or

(ii) Initiating an outbound telephone call to a person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.

(2) A seller or telemarketer will not be liable for violating § 310.4(b)(1)(ii) if:

(i) It has established and implemented written procedures to comply with § 310.4(b)(1)(ii);

(ii) It has trained its personnel in the procedures established pursuant to § 310.4(b)(2)(i);

(iii) The seller, or the telemarketer acting on behalf of the seller, has maintained and recorded lists of persons who may not be contacted, in compliance with § 310.4(b)(1)(ii); and

(iv) Any subsequent call is the result of error.

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8 a.m. and 9 p.m. local time at the called person's location.

(d) *Required oral disclosures.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call to fail to disclose promptly and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion.

## § 310.5 Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[3]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by

[3] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

written agreement, allocate responsibility between themselves for the recordkeeping required by this section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§310.5(a)(1)–(3) and (5); the telemarketer shall be responsible for complying with §310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

### §310.6 Exemptions.

The following acts or practices are exempt from this Rule:

(a) The sale of pay-per-call services subject to the Commission's "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308;

(b) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," 16 CFR part 436;

(c) Telephone calls in which the sale of goods or services is not completed, and payment or authorization of payment is not required, until after a face-to-face sales presentation by the seller;

(d) Telephone calls initiated by a customer that are not the result of any solicitation by a seller or telemarketer;

(e) Telephone calls initiated by a customer in response to an advertisement through any media, other than direct mail solicitations; provided, however, that this exemption does not apply to calls initiated by a customer in response to an advertisement relating to investment opportunities, goods or services described in §§310.4(a) (2) or (3), or advertisements that guarantee or represent a high likelihood of success in obtaining or arranging for extensions of credit, if payment of a fee is required in advance of obtaining the extension of credit;

(f) Telephone calls initiated by a customer in response to a direct mail solicitation that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1) of this Rule for any item offered in the direct mail solicitation; provided, however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, goods or services described in §§310.4(a) (2) or (3), or direct mail solicitations that guarantee or represent a high likelihood of success in obtaining or arranging for extensions of credit, if payment of a fee is required in advance of obtaining the extension of credit; and

(g) Telephone calls between a telemarketer and any business, except calls involving the retail sale of nondurable office or cleaning supplies; provided, however, that §310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

### §310.7 Actions by States and private persons.

(a) Any attorney general or other officer of a State authorized by the State to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and shall include a copy of the State's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the State or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this section shall prohibit any attorney general or

other authorized State official from proceeding in State court on the basis of an alleged violation of any civil or criminal statute of such State.

**§ 310.8 Severability.**

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.